JOHN GRYGIEL, *Admr. vs.* PETER F. GRYGIEL.

MAY 7, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action in assumpsit by the plaintiff as administrator with the will annexed of his father, the late Albert Grygiel, against the defendant, to recover the sum of $500. The case was tried before a justice of the superior court, sitting with a jury, and a verdict for the plaintiff for $530 was returned by the jury, the $30 representing accrued interest. The defendant thereupon filed a motion for a new trial, which was denied. The case is before us on defendant's exception to the denial of this motion, and on various other exceptions taken during the trial and to the charge of the court.

The evidence shows that on May 28, 1935, the deceased father of the plaintiff and defendant withdrew from his account in the Centreville Savings Bank the sum of $500. On June 5, 1935 an account, styled "Albert Grygiel, Peter F. Grygiel, Trustee", was opened in that bank by the defendant with an initial deposit of $300. Subsequently, on August 12, 1935, the defendant deposited $200 more in this account. The father, Albert Grygiel, died suddenly on April 20, 1936.

The following morning the defendant closed the account just described, and deposited the $500 of that account with the same bank in an account styled "Annette Grygiel, Peter F. Grygiel, Trustee." Annette was Peter's wife. The plaintiff claims that the $500 deposited by the defendant in the two trustee accounts mentioned belonged to his father and therefore is part of his estate.

The plaintiff had no personal knowledge of the facts in the case other than that his father's bankbook showed a withdrawal of $500 on May 28, 1935. He instituted this action by writ dated May 20, 1938, as a result of information that he received from his sister, Julia Skraba. She testified that in a conversation with her father at a hospital where she was confined, her father told her that: "Peter borrowed some money from him. He didn't say the amount and he didn't say if it was returned. That is all he said, that he (Peter) had borrowed a sum of money." The sister also testified that following this conversation with her father she was confined in a distant hospital for a considerable period of time; that some time after she returned to her home, which was after her father's death, she told the defendant what their father had said to her and asked him when he intended to return the money, as the final account in the father's estate was about due; that he then said to her that he had never borrowed any money from their father and accused her of being a trouble maker. Thereafter, she told the plaintiff what she knew and he then brought this action.

The defendant testified positively that the $500 in question was his own money and that he had not borrowed that sum or any other sum from his father, as the plaintiff claimed. He further testified that, for business reasons, he deposited his own money in various bank accounts, some standing in his own name, and others in the individual names of his wife and his children with himself as trustee.

His claim was that the bank account bearing his father's name was one of the latter class of deposits.

It is admitted by both parties that the issue in this case is purely one of fact, depending to a considerable extent upon the credibility of the witnesses and the surrounding circumstances. As the case was tried, the vital question at issue was whether the defendant had borrowed or otherwise obtained for his own use the sum of $500 from his father. The plaintiff, relying mainly on the sister's testimony as the basis for his claim against the defendant, contended that the $500 in the account styled "Albert Grygiel, Peter F. Grygiel, Trustee" represented money belonging to the father, while the defendant positively maintained that the sum so deposited for convenience was his own money.

The defendant's exception to the charge of the court is decisive of this case. Instead of allowing the jury to decide whose money went into the account just above mentioned when it was opened, the trial justice in his charge stated that: "It was the old man's money at that time anyway. No question about that. No question it was the old man's money when he (the defendant) deposited it. But afterwards apparently there was a change and the son claims now it was his money. Is it his money or was it the old man's money at the time he died?"

At the end of the charge, counsel for the defendant first asked the court to instruct the jury that it was "the duty of the plaintiff to prove that the money which the defendant is charged with owing was either borrowed by Mr. Grygiel, the defendant, or obtained by him in some fashion", and immediately thereafter saved an exception to that portion of the charge where the court had told the jury "that at some stage of the proceedings the money involved here was the property of the father." The trial justice refused to modify his charge, taking the position that he had not said that the money was the property of the father, and that he

had left it to the jury to say whether the money belonged to the father at the time he died.

The charge of the court as given clearly invaded the province of the jury in the circumstances of this case. In first stating to the jury as a fact that the money belonged to the father when the account, "Albert Grygiel, Peter F. Grygiel, Trustee", was opened, and then submitting to them the mere question of whether the money belonged to the father at the time he died, was a clear violation of the defendant's right to have all issues of fact in the case first determined by the jury, irrespective of the opinion of the trial justice in the matter at that time. The defendant positively and consistently stated that the money in that account was his own money, and not money that he had borrowed or received from his father. In this state of the evidence, the trial justice had no right to tell the jury as a fact that the money in that account was the father's money; nor was it then within his province to tell the jury that "afterwards apparently there was a change and the son claims now it was his money." It was for the jury and not for the trial justice to determine in the first instance all issues of fact fairly presented by the testimony in the case. The charge of the court prevented them from doing so. This was prejudicial error.

In view of our conclusion on the defendant's exception to the charge of the court in this case, it becomes unnecessary for us to consider the other exceptions of the defendant.

The defendant's exception herein considered is sustained, and the case is remitted to the superior court for a new trial.

*Quinn & Quinn, George Roche, A. Norman LaSalle,* for plaintiff.

*Raoul Archambault,* for defendant.