MAURICE E. PROCTOR *vs.* SOPHIA H. BAK.

APRIL 11, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an action of trespass and ejectment in which a jury in the superior court returned a verdict for the plaintiff. Thereafter the trial justice denied defendant's motion for a new trial. The case is here on defendant's exception to that denial and on several other exceptions that were taken during the trial.

On September 7, 1943 plaintiff leased in writing to the defendant a certain dwelling house located at 80 Cooke street in the city of Providence "to be used exclusively for the rental of apartments, in accordance with the laws and ordinances of the City of Providence, and for no other purpose." After the defendant had been in possession for several years it came to the attention of the plaintiff that she was violating the above covenant of the lease in that she was conducting a rooming house on the premises. In January 1948 plaintiff inspected the premises and as a result notified defendant to stop renting individual rooms to lodgers or transients. Thereafter on February 11, 1948 he

notified her that her lease was terminated because of such violation and to deliver up the premises to him not later than February 18, 1948. Defendant did not comply with that notice and on February 20, 1948 plaintiff commenced the instant trespass and ejectment action against her substantially on the ground of a violation of the covenant of her lease as above set forth.

It appears from the evidence that 80 Cooke street is a large and commodious private residence situated in a dwelling house zone. However, on a petition to the zoning board by Mrs. Janet I. Aldrich, plaintiff's predecessor in title, special permission was given to alter the building so that it could be used for thirteen apartments. Due to war restrictions, proposed alterations in the building which were necessary to make it conform to such permission could not be made, but on the assurance of the plaintiff, by letter to the building inspector sometime later in 1943, that the dwelling would not be used as a rooming house or in any way contrary to the permission for the use of the premises for apartments such permission was continued in effect.

The secretary of the zoning board of review testified that no permission had ever been granted to anyone to conduct a rooming house at 80 Cooke street. He also testified that a rooming house was not permitted in a dwelling house district. However, he stated that under sec. 4 of the zoning ordinance in such a district a certain number of rooms can be rented as an "accessory use" which he said was defined in sec. 28, paragraph (16), as follows: "An 'accessory use' or building is a subordinate use or building customarily incident to and located on the lot occupied by the main use or building."

The clerk of the bureau of police and fire testified that a license is required to conduct a rooming house in Providence and that the defendant had never applied for or received one for the dwelling house at 80 Cooke street. He further testified that under the rules and regulations of the bureau, paragraph 5, subsection 5, a third-class tavern

license was required for "houses or places furnishing sleeping accommodations for transient guests."

It further appeared from the evidence that from December 15, 1947 to February 15, 1948, defendant had numerous overnight guests in the various rooms of her house; that there were twenty-four rooms furnished with sleeping accommodations; that most of these were occupied by one or more individuals on a weekly or monthly basis, were not part of any specific apartment or suite, and were so arranged as to be individual and private; that in these rooms there were no facilities for preparing meals except an electric plate and in some there was not even that cooking appliance; and that all or most of the rooms had no sanitary accommodations, the occupants being required to use common toilet facilities.

There was some testimony by the defendant that she had tried to group various rooms into individual apartments by listing several room numbers under a particular apartment designation. Defendant also testified that facilities for preparing meals were available in the kitchen and this fact was made known to each guest on registering. On the other hand some of the guests who testified for the plaintiff said it would be impossible for all of them to be accommodated there and that only a few ever used the kitchen.

The trial justice felt that there was sufficient conflict in the evidence as to how the rooms were actually rented and as to what accommodations were offered to make it necessary to leave to the jury whether or not defendant was renting apartments within the meaning of the zoning ordinance, or was in fact conducting a rooming house and affording sleeping accommodations for transients in violation of the regulations of the bureau of police and fire. The finding of the jury on that issue would be decisive on the question whether she had been guilty of a breach of the condition of the lease as alleged by the plaintiff. Apparently defendant was content to have the matter thus left with the jury but she complains, first, that the trial

justice erroneously excluded relevant and material evidence from their consideration; and, secondly, that in two specific portions of his charge he erroneously instructed them in the law.

The rulings on the evidence are the subject matter of defendant's seventh and eighth exceptions which she has briefed and argued together. In the first instance the trial justice excluded the introduction in evidence of the petition which Mrs. Aldrich had filed with the zoning board of review for permission to use her house at 80 Cooke street for thirteen apartments. The second ruling excluded the file of the zoning board which contained her proposed plan for grouping the rooms into various apartments. The trial justice based his rulings on the grounds that the documents were irrelevant to and would tend to becloud the issue before the jury.

Defendant argued to us that this was clear error as the secretary of the zoning board had been examined on the action of the board in granting Mrs. Aldrich permission to use her house for thirteen apartments and that the file was the best evidence of the zoning classification made by the board. She also contended that, by denying the jury the opportunity to see the petition and file, the rulings unfairly hampered her in showing that she was substantially complying with the limitations which the board had imposed upon Mrs. Aldrich as a condition to her use of the house for apartments.

We have carefully considered these contentions in connection with our examination of the evidence and the issues involved in the case and we are of the opinion that the trial justice correctly excluded such evidence. No question of zone classification is present here. The board's action on Mrs. Aldrich's petition did not change the zone. She was merely given a special permit. As we reviewed the record it appeared to us that what Mrs. Aldrich planned to do in the alteration of her house was both immaterial and irrelevant to the issue that was on trial before the

jury. That issue was whether the defendant, in the manner in which she assigned guests to the various rooms of her house and otherwise provided accommodations for them, was in the main conducting a rooming house in violation of the covenant of her lease.

Whether she was trying to follow as closely as she could Mrs. Aldrich's plan was of no consequence. Admittedly the house had not been altered according to that plan. To submit it and Mrs. Aldrich's petition to the jury might only have confused rather than helped them. The defendant testified fully as to the actual scheme she was following in her use of the house for what she considered was an apartment use and not a rooming house use. The jury took a view of the premises and therefore had that assistance for a better understanding of her testimony on this point. We think there is no merit in the claim that she was deprived of presenting to the jury the best evidence of what she was trying to do merely because Mrs. Aldrich's proposed plan of alterations was excluded from their consideration. Her seventh and eighth exceptions are, therefore, overruled.

Defendant objects here only to two portions of the trial justice's charge, and these objections are being pressed under her twelfth and thirteenth exceptions. The sole issue for the jury to determine was whether defendant had breached the covenant of her lease which provided that the house "is to be used exclusively for the rental of apartments, in accordance with the laws and ordinances of the City of Providence, and for no other purpose." As the case was tried, plaintiff sought to show that defendant had in fact conducted a rooming house in violation of the special permit of the zoning board of review, and that in doing so for the accommodation of transient guests without first obtaining a license she had also violated the regulations of the bureau of police and fire which had the force and effect of law in Providence.

The defendant contended that her use of the house did

238

not amount to the conduct of a rooming house in violation of law because it was an apartment house as defined in sec. 28, paragraph (13), of the zoning ordinance and involved a so-called accessory use as defined in paragraph (16) of said section. Without objection, at least as far as we are now concerned in considering the exceptions which are being pressed in this court, the trial justice, after quoting various definitions to the jury, including the definition of apartment in sec. 28, paragraph (13), of the ordinance, left it to them to determine what was an apartment use of the house and what was a rooming house use. He also instructed them that they were to determine from the evidence whether there were in fact thirteen apartments or whether there was a greater number of individual rooms which had been customarily rented as such.

He then instructed them in the law as to "accessory use" under the ordinance as follows: " 'Accessory use of building is the subordinate use of building customarily incident to and located on the lot occupied by the main use of building.' Of course, there you must go into the question of fact. If the so-called transients who were taken into this dwelling were an 'accessory use' or not. That, of course, is to be understood as limited. *An occasional use may be an 'accessory use' but if it is a practise and continuous, then it is no longer an 'accessory use.' It is the major factor itself."* Defendant objected to the last two sentences which we have italicized.

Further on in his charge the trial justice said: "There has been some question about the words 'rooming house.' There is no definition in the booklet issued by the Zoning Board or in the Zoning Ordinance of the City of Providence as to those words: 'What is a rooming house?' *Altho, they do define a third-class tavern.* You can read that definition and see if the facts as you have heard them in the testimony bring it within that classification." (italics ours) Defendant objected to the words italicized above because they represented a clear misstatement of the evi-

dence, as the definition in question does not appear in the zoning ordinance but in the regulations of the bureau of police and fire. Since both the booklet containing the zoning ordinance and a printed paper containing the police regulation were before the jury as exhibits, we are of the opinion that the trial justice's slip of the tongue or lapse of memory, one of which we think it to be, placing the definition in the ordinance, clearly did not prejudice the defendant, and her exception to this portion of the charge is totally lacking in merit. It is definitely not similar to the language in the charge which we disapproved in *Kane* v. *Burrillville Racing Ass'n,* 73 R. I. 264, and bears no resemblance to the self-contradictory instructions which were held harmful in *McNear, Inc.* v. *American & British Mfg. Co.,* 42 R. I. 302. Nor does *Grygiel* v. *Grygiel,* 64 R. I. 444, another case cited by defendant, lend any support to her contention. The language objected to in the case at bar is a far cry from that in any of those cases insofar as it tended to create prejudice in the minds of the jury or to confuse them. Defendant's thirteenth exception to this portion of the charge is overruled.

Her twelfth exception to the portion of the charge first above quoted presents a more difficult question. Obviously the language is not as clear as it might be but whether, in view of the whole charge and especially taking into consideration the evidence bearing on the issue which was the subject of the instruction, it tended to mislead the jury to the defendant's prejudice is deserving of serious consideration before we may say that it necessarily vitiated the trial. Defendant contends that the issue of "accessory use" was important and vital to the defense, and that the trial justice's charge upon that phase of the case is, therefore, vital and important. This may be conceded, but to determine the question of prejudicial error we ought not to consider the charge as in a vacuum. We must try to put ourselves in the place of the jury with all the evidence before them and endeavor to estimate the effect upon them

of an unclear or obscure judicial exposition of the language of the ordinance.

The "accessory use" permitted by the ordinance was testified to by the secretary of the zoning board of review and the exact language was before the jury as an exhibit in the form of an official booklet containing the zoning ordinance. On page 31 thereof under sec. 28, paragraph (16), it is defined: "An 'accessory use' or building is a subordinate use or building customarily incident to and located on the lot occupied by the main use or building." Upon analysis it will be seen that the first key word here to explain the word "accessory" is "subordinate," and the second is "main." So to be "accessory" the use must be one "subordinate" to the "main" use and customarily incident thereto. Manifestly it cannot be a subordinate use if it becomes in reality the predominant use of the building.

In the case at bar it must have been manifest to the jury, from the overwhelming if not the uncontradicted evidence, that the renting of individual rooms to more or less permanent lodgers and in a large number of instances to transients had become the main use of the house. To use the language of the trial justice it had become "the major factor itself." Now, how it got to be that way does not, in our opinion, appear to be important. Whether it was only occasional or of long-continued practice, if at any time it amounted to a main use and not a subordinate use it would not be an "accessory use" within the meaning of the ordinance. Viewed in this light the words objected to by defendant were more in her favor than to her prejudice, because the jury might readily have assumed from the charge that if she had only occasionally permitted the renting of individual rooms to become the major use of the house such use was a permissible "accessory use."

The evidence tended to show a continuous use of the house for the renting of individual rooms to a predominant extent and, in our opinion, the jury felt that this was "the

major factor" to which the trial justice referred in saying that in such circumstances it was not an "accessory use." In our view, therefore, we cannot say that the jury was misled by the portion of the charge objected to by defendant, and her twelfth exception thereto is overruled.

Defendant's final exception is to the denial of her motion for a new trial. This motion was based on the usual grounds that the verdict was against the law, the evidence, the law and the evidence and the weight thereof and on two specific grounds, namely, that the verdict did not do substantial justice between the parties and that the jury failed to follow the instructions given them by the trial justice. These last two grounds are merely express assignments of reasons which are implicit in the general grounds first above stated. While defendant has briefed the exception to the denial of this motion she has not in her brief specifically argued any of the grounds thereof. Her contention therein is that the trial justice's denial is not entitled to the persuasive force customarily accorded to such a decision because he did not exercise his independent judgment of the evidence and expressly approve the verdict, but merely stated that he felt he was not at liberty to interfere with it.

While the trial justice undoubtedly did so express himself he also said something more which leads us to believe that he exercised his independent judgment of the evidence and came to the conclusion that the verdict represented a true reflection of the merits of the controversy. He stated in his decision that the evidence was "clear cut," that the jury had the benefit of a view, and that he felt when the verdict has "done substantial justice between the parties" and when it "is clearly based on questions of fact and credibility of the witnesses" he ought not to disturb it. This was tantamount to a positive statement that in his opinion the verdict did substantial justice in a case where the evidence was clear cut and its weight depended on the credibility of the witnesses. When fairly read we think

the decision, notwithstanding its brevity and indirect manner of expression, is entitled to full credit under our rule and therefore we ought not to disturb it unless it is clearly wrong.

While in her brief the defendant has not pointed out to us wherein the verdict runs counter to the evidence or the weight thereof and has not specified in what respect the jury failed to follow the law given to them by the trial justice, we have considered those grounds in view of the oral argument which she made generally in support of her motion. After carefully considering the charge we fail to find any support for the contention that the jury's verdict is against the law as given to them by the trial justice.

In connection with the contention that the verdict is against the evidence and the weight thereof, we have carefully read the transcript and are of the opinion that the trial justice was not clearly wrong in approving the verdict. The evidence is ample to support the conclusion that this defendant was not conducting an apartment house under the permit granted by the zoning board of review, and that she was not indulging in an "accessory use" of the dwelling house permitted under the zoning ordinance, but was engaged mainly in the business of renting individual rooms, in many cases to transients, in violation of the regulations of the bureau of police and fire. Her exception to the denial of her motion for a new trial is, therefore, overruled.

The defendant's other exceptions which have not been briefed or argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

### ON MOTION FOR REARGUMENT.

#### MAY 11, 1949.

PER CURIAM. After our opinion in the above-entitled case was filed defendant asked and received permission to

file a motion for reargument. Pursuant to this permission she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.